UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Zenell Pugh,                              Case No. 19-20696-beh

                Debtor.                    Chapter 13

**DECISION AND ORDER ON U.S. BANK NATIONAL ASSOCIATION'S OBJECTION TO CONFIRMATION**

Debtor Zenell Pugh filed his Chapter 13 petition and plan proposing to cure a pre-petition mortgage arrearage on his home, via a loan modification outside of bankruptcy, while maintaining current, post-petition mortgage payments.[1] Lender U.S. Bank National Association objected to plan confirmation, asserting that it holds a mortgage on the property, but that the debtor is not the person who had executed the note and mortgage. Instead, that person, Edward Tillman, is now deceased, and Pugh holds only a non-notarized quitclaim deed from the personal representative of Tillman's estate. The bank did not consent to the transfer. U.S. Bank argues that because the debtor has no legal obligation to the bank with regard to the property, the bank should not be required to negotiate with a non-borrower.[2] For the reasons set forth below, the Court sustains the bank's objection to confirmation.

**FACTUAL BACKGROUND**

Pugh has testified, by way of affidavit,[3] that Edward Tillman, the original signer of the note and mortgage to U.S. Bank for the property at 2353-55 N.

---

[1] The plan proposes that the debtor will complete the modification within six months, and if not approved, the debtor will amend the plan to provide feasibility for the arrearage claim or surrender the real estate.

[2] U.S. Bank's original objection to confirmation also asserted that the debtor's plan failed to provide adequate protection for the bank's claim, because it underestimated the amount of pre-petition arrearage owed. ECF Doc. No. 30, at 2. The proof of claim identified a pre-petition arrearage amount below that projected by the plan. *See* Claim No. 7-1.

[3] There is no indication on Pugh's affidavit as to the identity of the purported notary, which should be part of authentication.

44th Street, Milwaukee, was his brother. Pugh attests that Tillman died "in 2013." ECF Doc. No. 50, at 1. He also asserts that "on or around June 1, 2014, the subject real estate was transferred" to the debtor. *Id.* Pugh provides no specifics as to the manner of transfer. The debtor asserts that he has made payments on the mortgage since his brother's death. His plan proposes to continue monthly mortgage payments of $560, and that "the debtor will complete mortgage modification with US Bank outside of bankruptcy, within 6 months. If debtor modification is not approved, debtor will amend plan to provide feasibility for arrearage claim or surrender real estate." ECF Doc. No. 4, §§ 3.1, 8.1

Pugh also notes that the instant case is not his only bankruptcy filing since the real estate was transferred. He filed a Chapter 13 case on January 4, 2016, Case No. 16-20010. Pugh listed U.S. Bank as a creditor, and his plan proposed to enter into a loan modification with the bank, through the Court's Mortgage Modification Mediation ("MMM") Program, to address approximately $4,500.00 in mortgage arrears (a mediation request to which the bank consented). Case No. 16-20010, ECF Doc. No. 10, at 5.[4] In that case, U.S. Bank filed a secured claim including $6,502.00 in arrearages on the property loan. Case No. 16-20010, Claim No. 5-1. But Pugh's case was dismissed shortly after confirmation, in October, 2016, for failure to make payments. Case No. 16-20010, ECF Doc. No. 42. The mediator's report noted "bankruptcy has been dismissed and parties are continuing to negotiate regarding a loan modification outside of the mediation program." Case No. 16-20010, ECF Doc. No. 44.

Pugh filed another Chapter 13 case on March 22, 2017. Case No. 17-22362. He again listed U.S. Bank as a creditor, and in his plan proposed to enter into mortgage modification mediation to address approximately $9,000.00 in mortgage arrears. Case No. 17-22362, ECF Doc. No. 3, at 6.

---

[4] The Court can take judicial notice of the filings under oath in Pugh's other bankruptcy cases. *Tuttle v. Educ. Credit Mgmt. Corp. (In re Tuttle)*, 600 B.R. 783, 789 n.2 (Bankr. E.D. Wis. 2019) (citations omitted); *see also In re Lisse*, 905 F.3d 495, 496-97 (7th Cir. 2018).

That plan was confirmed on October 24, 2017.  Case No. 17-22362, ECF Doc. No. 31.  The bank again consented to mediation.  Case No. 17-22362, ECF Doc. No. 23.  But the second mediation process failed to result in loan modification.  Case No. 17-22362, ECF Doc. No. 33.  Thereafter the bank filed a motion for relief from stay regarding the 44th Street property, which Pugh did not oppose.  The court lifted the stay on January 11, 2018.  Case No. 17-22362, ECF Doc. No. 37.  On May 21, 2018, the court dismissed the case following the trustee's affidavit of default, due to Pugh's failure to file a modified plan to address the mortgage arrears as required under the MMM program.  Case No. 17-22362, ECF Doc. No. 43.

Pugh asserts that his last case was dismissed because he lost his employment and was unable to make payments.  He is now employed full-time.  ECF Doc. No. 13.  The Bank asserts that arrears are about the same as in the last case, or $8,236.07.  Claim No. 7-1.  The mortgage invoicing remains in the name of Edward Tillman.  *Id.* at 34.  The proof of claim includes a copy of the original note and mortgage.  The Definitions section of the August 3, 2010 mortgage states:

> "**(Q) Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument."

*Id.* at 17.  Other provisions of the mortgage relate to successors in interest:

> **13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound**
> … Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.
> …
>
> **18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration.
> ...

*Id.* at 24–25.

U.S. Bank's response brief offers further detail, including that the borrower's date of death was April 2, 2013.[5] The bank asserts that Tillman's mother, Cynthia Tillman, acquired title to the property as an heir of borrower. Cynthia Tillman quitclaimed the property to Pugh more than a year after the borrower's passing.[6]

## ANALYSIS

### 1. What is the Nature of the Debtor's Interest in the Property and Rights Under the Note?

The debtor asserts that the bank should treat him as a borrower because he is a "successor in interest," as defined by 12 C.F.R. § 1024.31. ECF Doc. No. 48. That definition follows:

> For purposes of this subpart:
> . . .
> **Successor in interest** means a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is:
>
> (1) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;
>
> (2) A transfer to a relative resulting from the death of a borrower;
>
> (3) A transfer where the spouse or children of the borrower become an owner of the property;
>
> (4) A transfer resulting from a decree of a dissolution of marriage, legal

---

[5] While the bank does not offer any evidentiary support to confirm the borrower's date of death, this Court can take judicial notice of certain electronic circuit court (WSCA) records, formerly known as CCAP records. *Tuttle*, 600 B.R. at 789 n.2. Informal probate proceedings from Milwaukee County Circuit Court matter 2014-PR-0005 show that Edward M. Tillman, of 2355 N. 44th Street, Milwaukee, died on April 3, 2013.

[6] Exhibit A to the bank's brief is a copy of an unauthenticated quitclaim deed, transferring 2355 N. 44th St., Milwaukee, WI from Cynthia Tillman to Zenell Pugh, dated June 1, 2014. The debtor does not dispute the accuracy of Exhibit A.

> separation agreement or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property; or
>
> (5) A transfer into an *inter vivos* trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property.

12 C.F.R. § 1024.31.

The debtor relies on a Consumer Financial Protection Bureau ("CFPB") interpretive rule and guidance to argue that a mortgage servicer has certain duties when the original borrower dies, citing to 12 C.F.R. Part 1026.[7] He argues that when an heir already has acquired title to the home, adding the heir as a borrower on the mortgage does not trigger "Ability-to-Repay" requirements. He also argues that 12 C.F.R. § 1024.31 requires servicers to promptly identify and communicate with "successors in interest." ECF Doc. No. 48. Under that rule, Pugh asserts, successors in interest are afforded the same protections under federal mortgage servicing rules as the original borrower. Those protections include, according to Pugh, the ability to apply for loss mitigation options, including loan modifications. *Id.*

Pugh also points to a CFPB Bulletin from October 15, 2013, to assert that mortgage servicers must have policies and procedures in place to ensure they identify and communicate with surviving family members and others with a legal interest in the home, such as allowing heirs to continue to pay the mortgage, to take over the mortgage or qualify for loss mitigation options. According to Pugh's distillation of 12 C.F.R. § 1024.31, a "successor in interest" is someone who receives property upon the death of a relative. ECF Doc. No. 48, at 4. Pugh maintains that the bank has a duty to treat him as the borrower, and that the bank must enforce provisions of the servicing rules, such as loss mitigation procedural protections. *Id.* at 5.

U.S. Bank agrees that Pugh is a Successor-in-Interest as defined by the mortgage, *see* ECF Doc. No. 62, but is not a successor by testation. As a result, the bank argues Pugh lacks an ability to cure, or even a right to cure

---

[7] The debtor several times refers to "12 C.F.R. Section 1026 (2014)," which does not exist. The Court presumes the debtor meant to cite to 12 C.F.R. *Part* 1026, which consists of §§ 1026.1 through 1026.61.

the mortgage arrears. Instead, the bank asserts that Cynthia Tillman's transfer of the property to Pugh triggered the due-on-sale clause of the mortgage. Consequently, the entire balance of the claim is due and owing now. *See* ECF Doc. No. 52, at 3 and ECF Doc. No. 62. The bank relies on 11 U.S.C. § 1322(b)(2), as well as *In re Threats*, 159 B.R. 241, 242–43 (Bankr. N.D. Ill. 1993) (allowing debtors to de-accelerate the loan would eviscerate the due-on-sale clause, where debtors did not assert they had complied with mortgage assumption terms), and *In re Tewell*, 355 B.R. 674, 682 (Bankr. N.D. Ill. 2006) (transfer of the mortgage in debtor's plan would be an impermissible modification of creditor's right to enforce, at its option, the due-on-sale clause in violation of section 1322(b)(2), as there is no mortgagor-mortgagee relation to restore).

Pugh's primary argument is flawed, because it equates his interest in the property obtained via quitclaim from an heir of the borrower, with the interest of an heir or survivor succession (testation). They are not the same. Edward Tillman's mother was his heir, and she is the person who received the transfer of Edward's interest in the 44th Street property upon his death. *See* 12 C.F.R. § 1024.31(1)(2). Cynthia Tillman later disposed of *her* interest not by testation to her heir, but by a routine property transaction: the filing of a quitclaim deed. The fact that Pugh may be a blood or marital relation of the deceased borrower Edward Tillman is irrelevant, because Pugh is not a successor in interest of Edward Tillman under any of the means defined in 12 C.F.R. § 1024.31(1)-(5).

And even though Pugh is a successor in interest as defined by the mortgage documents, *see* definition (Q), both the mortgage's due-on-sale clause[8] and 11 U.S.C. section 1322(b)(2)[9] in combination with 11 U.S.C.

---

[8] *See* Claim No. 7-1, at 24–25: "If all or any part of the Property or any Interest in the Property is sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law."

[9] 11 U.S.C. § 1322(b)(2) provides: "Subject to subsections (a) and (c) of this section, the plan may— . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

section 1325(a)(5),[10] prevent him from modifying U.S. Bank's rights without the bank's consent.

The Bankruptcy Code is silent on the subject of due-on-sale clauses. Courts, therefore, usually turn to state law to determine if such clauses, which are a "fundamental aspect of a mortgagee's rights," are valid. *Tewell*, 355 B.R. at 679–80 (recognizing a split in authority among courts as to how a debtor who is not the original mortgagor can treat a mortgage that contains a due-on-sale clause in the plan and agreeing with decisions holding that a debtor who obtained residential property from the original mortgagor without adhering to the due-on-sale clause may not cure mortgage defaults through the plan over the mortgage holder's objection). The *Tewell* court ultimately found that treatment of the mortgage in the debtor's plan would be an impermissible modification of the creditor's right to enforce the due-on-sale clause in violation of section 1322(b)(2).

Several years later, in *French v. BMO Harris Bank, N.A.,* No. 12-C-1896, 2012 WL 1533310, at *3 (Bankr. N.D. Ill. April 30, 2012), the court cautioned that federal law limits the validity of "due on sale" clauses in certain circumstances, including when transfer is to a relative resulting from the death of the borrower. This restriction on the enforceability of due-on-sale clauses creates a federal right of transfer and governs, despite any limitations imposed

---

[10] 11 U.S.C. § 1325(a)(5): Except as provided in subsection (b), the court shall confirm a plan if . . . with respect to each allowed secured claim provided for by the plan—

  (A) the holder of such claim has accepted the plan;

  (B) (i) the plan provides that— (I) the holder of such claim retain the lien securing such claim until the earlier of— (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328; and (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

  (iii) if— (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

  (C) the debtor surrenders the property securing such claim to such holder[.]

by state law. *French,* at *4, *citing* Garn-St. Germain Depository Institutions Act of 1982. Here there is a distinction. Unlike the transfer in *French*, where the debtor received the property from his aunt's estate after she died, Pugh did not receive the property from borrower-decedent Tillman upon Tillman's death. Rather, Tillman's mother acquired title to the property as an heir of the borrower. She quitclaimed the property to Pugh more than a year after the borrower's passing. Accordingly, the Garn-St. Germain Act does not limit enforceability of the due-on-sale clause here. And Wisconsin state law recognizes due-on-sale clauses. *See Mutual Federal Savings & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis. 2d 99, 107, 205 N.W.2d 762 (1973) (although a restraint on alienation, a due-on-sale clause is deemed reasonable in Wisconsin, depending on the equities of the particular case, because it protects a justifiable security interest of the mortgagee).

Section 1322(b)(2) prohibits modifying the rights of a secured creditor whose claim is secured by only the debtor's principal residence. *See In re Carr*, 318 B.R. 517, 521 (Bankr. W.D. Wis. 2004). When the residential mortgage holder does not consent to such a modification, *see* section 1325(a)(5)—as the bank does not consent here—the section 1322(b)(2) prohibition must be enforced.

2. **Does *Res Judicata* or Collateral Estoppel Apply to Require U.S. Bank to Participate in Mortgage Modification Mediation?**

Pugh next makes a *res judicata* or collateral estoppel argument. ECF Doc. No. 48, at 5, citing *Nevada v. United States*, 463 U.S. 110, 145 (1983).[11] Pugh contends that in his prior two Chapter 13 cases, his plans included a provision for participation in mortgage modification with U.S. Bank. Because the bank did not object then and both Pugh's plans were confirmed, Pugh asserts that the three elements of *res judicata* exist—in his words, same parties

---

[11] In *Nevada v. United States,* the Supreme Court, in a tribal water rights case, described the doctrine of *res judicata* to mean that when a final judgment has been entered on the merits it is final as to the claim or controversy between those parties and those in privity with them, as to every matter which was offered and which might have been offered between them. 463 U.S. at 129–30.

were involved in prior filings, issue of proposed mortgage modification is similar, and plan confirmation is a final judgment. Because of this asserted estoppel, Pugh argues that the Bank now may not decline to engage in modification discussions simply because Pugh is not the person who executed the note and mortgage.

U.S. Bank disagrees. The bank notes that although a plan confirmation order binds the creditor with respect to treatment of that creditor's claim, the *res judicata* effect of plan confirmation is limited to whether the plan complied with the existing confirmation requirements, citing *LVNV Funding, LLC v. Harling*, 852 F.3d. 367, 373-374 (4th Cir. 2017). More importantly, treatment of the creditor's claim and its acceptance of that treatment are limited to that particular plan, and completion of the plan in that discrete case. ECF Doc. No. 50, at 3. Section 349(b) of the Code provides that dismissal reinstates the creditor's rights under the original contract, and restores its property rights as they existed before the case was filed. The bank notes that both of Pugh's prior cases were dismissed before plan completion.

U.S. Bank has the better argument. As the *LVNV Funding* court explained, "[f]or *res judicata* to apply, there must be an initial final judgment involving the same parties as are present in a later proceeding that is based upon the same cause of action as in the first proceeding," *LVNV Funding,* 852 F.3d. at 373.[12] In that case, the parties agreed that the prior confirmation orders were final judgments as to their subject matter and that the same parties were before the bankruptcy court when the orders were entered, thus the only issue was whether the cause of action in the later proceeding (claim objection) was any part of the cause of action in the first proceeding (plan confirmation). But because the first bankruptcy court did not adjudicate the claim objection—the question at issue in the second proceeding—*res judicata* did not apply. *Id.* at 373–74.

---

[12] *See also United Student Aid Funds, Inc. v. Espinosa,* 559 U.S 260, 269 (2010) (concluding that a bankruptcy court's order confirming a proposed plan is a final judgment).

*LVNV Funding* is instructive here, because Pugh's prior plan confirmations and attempts to use the MMM program were neither contested nor resulted in judgments on the merits. *See In re Ranieri*, 598 B.R. 450, 455 (Bankr. N.D. Ill. 2019) (noting that a final judgment on the merits of an action precludes parties from relitigating issues that were or could have been raised in that action). In other words, a consent to proceed with mediation is a voluntary, not contested, matter, and therefore its outcome lacks preclusive effect. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1372–73 (Fed. Cir. 2013) (recognizing that voluntary dismissal with prejudice does not have issue preclusive effect); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) (a voluntary dismissal does not actually litigate any issue).

Finally, courts have held that "[w]hen a Chapter 13 case is dismissed prior to completion, the confirmed plan is voided and neither *res judicata* nor collateral estoppel apply because there is no longer a final judgment." *In re Wertz*, 557 B.R. 695, 705 (Bankr. E.D. Ark. 2016) (plan confirmed prior to dismissal effectively was vacated upon dismissal of case, thus terms of plan no longer were binding on the debtor or the creditor and confirmed plan did not constitute a "final" judgment for purposes of *res judicata*) (citations omitted).

**3.     Was the Debtor's Plan Filed in Good Faith?**

U.S. Bank's last argument against plan confirmation is that the debtor's plan was not filed in good faith. The bank urges that conclusion because mortgage payments have been in arrears since September 2016, Pugh's prior two bankruptcy cases ended with failed mortgage mediation attempts, and his present proposal—to delay payments to the bank for six months while he makes a third attempt at modification—should be viewed as a mere delaying tactic. The bank cites *In re Kinney*, 51 B.R. 840, 845 (Bankr. C.D. Cal. 1985), in which members of the Kinney family filed ten petitions within a 25-month period in concerted, intertwined efforts to prevent their mortgage lender from recognizing its security. Here, U.S. Bank contends that Pugh could have

refinanced the property in his own name in the two years since the quit claim deed was executed, but for some reason has not done so.

Pugh's *res judicata* argument undergirds his view that this third Chapter 13 plan, which again proposes loan modification, was filed in good faith. He relies on the bank's prior participation in the MMM program as a basis for him to assume the bank would consent, once again, to mediate.

In the recent past, the policy of this district has been to encourage participation in mortgage modification via mediation. *See In re Vargas*, No. 16-23199, ECF Doc. No. 30 (Sept. 30, 2016). Our district generally has ordered parties to mediate, unless it would be futile, or some other compelling reason exists, such as a history of unsuccessful and denied loan modifications. *See, e.g., In re Chisholm*, No. 18-30283, ECF Doc. No. 40 (March 26, 2019). While the bank's objection to confirmation is not procedurally an objection to a motion for mortgage modification mediation, such an objection is subsumed within the objection to confirmation. In light of two recent mediation failures, it is an objection the Court would sustain.

But the Court does not sustain the objection on the grounds of bad faith, first because the case history is not egregious as in *Kinney*, and more importantly, because the bank's own consent to mediate twice with a non-testatory owner created a fair basis for debtor think the bank might elect to do so again.

### ORDER

Nonetheless, for the other reasons set forth above, IT IS ORDERED that U.S. Bank's objection to confirmation is sustained. The debtor must file and serve a feasible amended plan on or before **October 1, 2019.**

Dated: September 3, 2019

By the Court:

*Beth E. Hanan*
Beth E. Hanan
United States Bankruptcy Judge